## PEOPLE v WILLIS

1. SEARCHES AND SEIZURES—EVIDENCE—FRUIT OF THE POISONOUS TREE
—BURDEN.

A defendant who raises the issue of the propriety of an identification as a direct consequence of an illegal search and seizure must prove that a substantial portion of the case against him was a fruit of the poisonous tree after establishing a primary taint due to illegal police activity, and only after he has done so is the prosecution required to show that the evidence complained of had an independent origin, or was the product of an intervening independent act of the defendant's free will, or that the connection between the unlawful act and the evidence sought to be used has become so attenuated as to dissipate the taint.

2. CRIMINAL LAW—WITNESSES—IDENTIFICATION—REHABILITATION.

Testimony by an officer concerning witnesses' reactions upon seeing photographs of the defendant is hearsay testimony despite the fact that the officer testified to what the witnesses did rather than what they said, and although such testimony is improper to bolster an eyewitness's in-court identification, it was permissible for the prosecution to produce the officer who presented the photographs to testify to the witnesses' tentative identification as a method of rehabilitation of the eyewitnesses where one eyewitness made no identification at trial at all and the other said he did not see the defendant at the site of the crime and could not identify him as the perpetrator at a prior lineup.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 February 7, 1963, at Grand Rapids. (Docket No. 13237.) Decided April 24, 1973. Leave to appeal denied, 390 Mich 777.

David Willis was convicted of armed robbery. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 415, 531.
[2] 21 Am Jur 2d, Criminal Law §§ 368, 369.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

David Willis, *in propria persona.*

Before: DANHOF, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

J. H. GILLIS, J. Defendant David Willis and Clarence Williams[1] were convicted by a jury of armed robbery. MCLA 750.529; MSA 28.797. Defendant appeals *in propria persona.*

The facts surrounding the commission of the robbery of the Alaska Fur Store in Grand Rapids were carefully set out by Judge Holbrook in *People v Clarence Williams,* 39 Mich App 234 (1972). Because defendant raises other issues, we set out the facts surrounding the events leading to the arrest of both subjects in detail.

In the early morning hours of the day following the commission of the crime in Grand Rapids, an Ohio state trooper observed a car traveling the Ohio turnpike at a high rate of speed. He gave chase and determined the vehicle was traveling in excess of 100 miles an hour. Upon stopping the vehicle, neither the driver, defendant Willis, nor the passenger, Clarence Williams, could produce a valid registration. Defendant stated the car belonged to a friend and he was returning it to Cleveland. He did not remember his friend's name or where he lived. The trooper, suspecting the car to be stolen, frisked both passengers and found no weapons. The trooper, without turning his back to the subjects, checked the area under the front seat

---

[1] The conviction of this codefendant was affirmed in *People v Clarence Williams,* 39 Mich App 234 (1972).

of the car and found two .38-caliber pistols. The trooper made a search of the interior of the car because, at that time, he had not made a determination of whether he would allow the subjects to drive the car to the nearest police station or court for posting bond, or to take them into custody. Upon finding the weapons, his choice of alternatives narrowed. He placed them under arrest, called for assistance, and the car was towed away.

An inventory of items found in the car was made shortly thereafter, pursuant to Ohio State police regulations. A large quantity of furs with tags identifying their origin as the Alaska Fur Store was found in the trunk. Federal authorities as well as the Grand Rapids police were contacted and police mug shots, taken pursuant to the Ohio arrest, were eventually shown to several of the victims of the robbery in Michigan who later testified at trial.

Prior to trial, a hearing was held to determine the admissibility of the weapons and furs found in the car. The trial court held the search illegal and suppressed that evidence. The trooper was permitted to identify the make, model, year, and license plate of the car, its occupants, and their clothing, as well as the circumstances of the speeding violation. The circumstances surrounding the identification by mug shots was also shown at trial.

Defendant maintains that the investigation of the robbery in Michigan focused on him as a direct consequence of an illegal search and seizure. Consequently, he argues, unless the identification testimony can be shown the result of an independent basis rather than the primary taint of an illegal search, his conviction ought to be reversed. See *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963); *Silverthorne Lumber Co*

*v United States,* 251 US 385; 40 S Ct 182; 64 L Ed
319; 24 ALR 1426 (1920).

This argument, an adaption of the "fruit of the
poisonous tree doctrine" was not raised at or
before trial. In *Nardone v United States,* 308 US
338, 341; 60 S Ct 266, 268; 84 L Ed 307, 312 (1939),
certain burdens were placed on defendants raising
such a theory. The defendant must "prove that a
substantial portion of the case against him was a
fruit of the poisonous tree" after establishing a
primary taint due to illegal police activity. Only
after he has done so is the prosecution required to
show the complained evidence had independent
origin, or was the product of an intervening inde-
pendent act of the defendant's free will, or that
the connection between the unlawful act and the
evidence sought to be used has become so attenu-
ated as to dissipate the taint.

Whatever the merits of defendant's theory, the
facts necessary to support its application are not
present in the record, nor has the prosecution
been called upon to respond. We see no reason
why any such theory could not have been pre-
sented contemporaneously with the motion to sup-
press the other evidence, as required by *People v
Childers,* 20 Mich App 639 (1969); *People v Mat-
thews,* 22 Mich App 619 (1970). Consequently, we
see no reason to delve into the intricacies of de-
fendant's unsupported theory.[2]

We note, by way of dictum, that we are *not*
convinced the trooper acted illegally in the first
place. He was alone on the turnpike with two men

---

[2] It may very well have been that the reason the theory was not
advanced below was based in trial tactics. Evidence of only tentative
identification testimony from mug shots of suspects arrested in an-
other state might have been considered by counsel as a major flaw in
the prosecution's case, especially since the jury was never made
aware of the stolen goods in defendant's possession.

obviously in a hurry to go somewhere in a car for which they could produce no registration or reasonable explanation of possession. Under such circumstances the trooper could reasonably believe the car stolen. *People v Marshall,* 25 Mich App 376 (1970); *People v Ceccone,* 260 Cal App 2d 886; 67 Cal Rptr 499 (1968); *Commonwealth v Dussell,* 214 Pa Super 1; 248 A2d 857 (1969); *People v James,* 1 Cal App 3d 645; 81 Cal Rptr 845 (1969); *People v Mermuys,* 2 Cal App 3d 1083; 82 Cal Rptr 902 (1969); *Sewell v United States,* 406 F2d 1289 (CA 8, 1969). See also *In re Winkle,* 372 Mich 292 (1964). The initial search of the interior of the car which produced the weapons might have been justified as a search incident to a felony arrest, but, in any event, was motivated by the officer's concern for his own safety in the event he allowed the suspects to return to the car and accompany him, but under their own power, to the nearest police station to post bond.

The resultant inspection of the impounded vehicle for inventory purposes pursuant to police regulations can not easily be classed as a search in the constitutional sense for that implies a "prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way." *Weltz v State,* 431 P2d 502, 505 (Alaska, 1967). Rather, it was done for the purpose of securing property of either defendant or the true owner of the car. The "search", if that is what it is called, might have been justified under the now emerging theory upholding similar "inventory searches". *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968); *Mozzetti v Sacramento County Superior Court,* 4 Cal 3d 699; 484 P2d 84; 94 Cal Rptr 412 (1971); *United States v Mitchell,* 458 F2d 960

(CA 9, 1972); *Cabbler v Commonwealth,* 212 Va 520; 184 SE2d 781 (1971); *United States v Kelehar,* 470 F2d 176 (CA 5, 1972); *United States v Gerlach,* 350 F Supp 180 (ED Mich, 1972). Thus, we are not convinced a primary taint of illegality existed in defendant's case at all.

Defendant complains he was not represented by counsel when the pictures were shown to the witnesses. At that time he had yet to be arraigned on a warrant. Whether there is a constitutional right to the presence of counsel at a photographic identification prior to the formal filing of charges (see *People v Pinette,* 42 Mich App 250 [1972]; *People v Anderson,* 389 Mich 155 [1973]), this issue was not raised at trial. Review of the record reveals only a small degree of evidence stemmed from the photographic identification proceedings. Any error would be harmless.

Defendant contends it was error to allow the officer who showed the photographs prior to trial to two of the witnesses to testify about the witnesses' reactions upon seeing them. The fact that the officer testified what these witnesses *did,* rather than what they *said,* does not alter the fact that his testimony was hearsay. *People v Poe,* 388 Mich 611 (1972), indicates the prosecution should not attempt to bolster an eyewitness's in-court identification by a prior *consistent* statement of identification. This was not the case here. One witness made no identification at trial at all. The other witness said he did not see defendant Willis at the store and could not identify him as a perpetrator at a prior lineup. The issue of the witnesses' pretrial identification difficulty was thoroughly brought out in cross-examination by defense counsel. We think it was permissible for the prosecution to produce the officer who pre-

sented the photographs to testify to the witnesses' tentative identification as a method of rehabilitation of these eyewitnesses.

Review of the record reveals defendant was represented by a rather zealous defense attorney. We are satisfied defendant received effective assistance of counsel.

The remainder of defendant's assignments of error were either not preserved for appellate review or are of insufficient basis to warrant discussion.

Affirmed.

All concurred.