PEOPLE v MORGAN CLARK

Opinion of the Court

1. Searches and Seizures—Automobiles—Search of Wife's Car—Standing.

A defendant has no standing to challenge the legality of a search of his wife's automobile and the seizure of a suitcase found inside where he was not present at the time of the search and seizure, he had no proprietary or possessory interest in either the suitcase and its contents or in the automobile, and the suitcase and its contents were not in his possession when seized.

Dissent by R. E. Noble, J.

2. Searches and Seizures—Search Without Warrant—Reasonableness—Automobiles.

*A search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant, except in certain carefully defined classes of cases; one class of cases which constitute at least a partial exception to the general rule is automobile searches.*

3. Searches and Seizures—Automobiles—Inventory Search—Reasonable Expectation of Privacy—Police—Motives.

*An inventory of an automobile's contents is a search of the automobile because the inventory may involve an examination of areas where a person has a reasonable expectation of privacy; good motives of the police in conducting an inventory cannot transform the inventory into anything other than a search.*

References for Points in Headnotes
[1, 11–13] 68 Am Jur 2d, Search and Seizure § 16.
[2–4, 6–10] 5 Am Jur 2d, Arrest §§ 26, 28.
[5] 68 Am Jur 2d, Search and Seizure §§ 34, 57, 106.
[14] 29 Am Jur 2d, Evidence §§ 523–596.

4. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—AUTOMO-
BILES—INVENTORY SEARCH.

*An automobile inventory search may properly be conducted without a warrant where the search is motivated by a police desire to protect individual property and the search is not primarily to ferret out incriminating evidence.*

5. SEARCHES AND SEIZURES—INVENTORY SEARCH—PERMISSION OF
OWNER—PLAIN VIEW—CLOSED CONTAINERS.

*The limits on an inventory search of an automobile are: (1) the owner or operator should be allowed to determine if he wants the property protected by the police and, if so, to what extent, (2) in cases where the owner or operator cannot make his wishes known, the property in most instances would be adequately safeguarded by rolling up the windows and locking the doors, subject to reasonable steps to safeguard property in plain view within the automobile, and (3) the inventory must be limited to those items in plain view and closed suitcases and containers are not to be opened.*

6. SEARCHES AND SEIZURES—SEARCH INCIDENT TO ARREST.

*Once an accused is under arrest and in custody, a search made at another place without a warrant is not incident to the arrest.*

7. SEARCHES AND SEIZURES—SEARCH INCIDENT TO ARREST.

*A search of a suitcase cannot be incident to a defendant's arrest where the defendant had not been arrested when the suitcase was examined.*

8. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—AUTOMO-
BILES—PROBABLE CAUSE—EXIGENT CIRCUMSTANCES.

*The police must have probable cause to search an automobile without a warrant and there must be an exigent circumstance, such as an opportunity of automobile mobility; however, less stringent conditions are required for a warrantless search of an automobile than is otherwise required.*

9. SEARCHES AND SEIZURES—PROBABLE CAUSE—AUTOMOBILES—BRO-
KEN TAILLIGHT—HIGH-SPEED CHASE.

*Police did not have reasonable or probable cause to believe that they would find the instrumentality of a crime in the car of a defendant who was driving with a broken taillight and who, when the police tried to stop him because of the broken taillight, sped up to 120 m.p.h., ditched his car, and then fled on foot.*

10. Searches and Seizures—Search Without Warrant—Automo-
    biles—Exigent Circumstances.

    *There were no exigent circumstances to justify the search with-
    out a warrant of an automobile where the car was disabled, its
    owner was under arrest for a traffic violation, and a search
    warrant could have been sought from a magistrate before the
    owner would drive the car off.*

11. Searches and Seizures—Standing.

    *There is no standing to contest a search and seizure where the
    defendant (a) was not on the premises at the time of the
    contested search and seizure, (b) alleged no proprietary or
    possessory interest in the premises, and (c) was not charged
    with an offense that includes, as an essential element, posses-
    sion of the seized evidence at the time of the contested search
    and seizure.*

12. Searches and Seizures—Standing.

    *A defendant, in order to have standing to contest a search and
    seizure, must have a legitimate interest of some kind in the
    premises searched or the objects seized.*

13. Searches and Seizures—Automobiles—Search of Wife's Car—
    Standing—Reasonable Expectation of Privacy—Abandon-
    ment.

    *A defendant has standing to contest a search of a stolen suitcase
    found on the back seat of his wife's car where the defendant, as
    the driver of the car and the husband of the car owner, had a
    reasonable expectation of privacy in the vehicle, where the
    defendant was the one against whom the search was directed,
    and where the defendant did not abandon his privacy interests
    by fleeing from the car.*

14. Criminal Law—Confessions—Voluntariness—Appeal and Er-
    ror.

    *A reviewing court is required to make an independent determina-
    tion on the issue of the voluntariness of a confession; however,
    the reviewing court will not reverse the trial judge's determina-
    tion unless left with a definite and firm conviction that he
    erred in his ruling.*

Appeal from Wayne, Theodore R. Bohn, J. Sub-
mitted January 7, 1976, at Detroit. (Docket No.
22126.) Decided May 17, 1976.

Morgan O. Clark was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Musilli, Meyers & Murphy, P. C.,* for defendant.

Before: J. H. GILLIS, P. J., and QUINN and R. E. NOBLE,* JJ.

QUINN, J. The crime that defendant was convicted of and sentenced for and the facts are fully set forth in the dissent. We agree with the resolution of the admissibility of the confession issue as found in that dissent.

The trial court properly denied defendant's motion to suppress the evidence resulting from the search and seizure. Defendant had no standing to challenge the legality of the search and seizure. He was not present at the time of the search and seizure; he had no proprietary and possessory interest in the suitcase and its contents or in the automobile; nor were the suitcase and contents in his possession when seized, *Brown v United States,* 411 US 223; 93 S Ct 1565; 36 L Ed 2d 208 (1973).
Affirmed.

J. H. GILLIS, P. J., concurred.

R. E. NOBLE, J. *(dissenting).* Defendant was charged with, and after a jury trial found guilty of, the first-degree felony murder of Lucille Anne

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Moss, MCLA 750.316; MSA 28.548. He bases this appeal on two alleged errors committed below: the admission into evidence of information gained by the opening of a suitcase and the admission into evidence of defendant's confession.

In the early morning hours of December 26, 1973, two patrolling State Police troopers, Sass and Collins, travelling west on I-96 near Kensington Park, observed that a 1966 Oldsmobile, occupied by a male driver and female passenger, had a broken taillight. The officers ordered the driver of the car to pull over. After momentarily slowing down, the driver accelerated, with the officers giving chase. After a lengthy chase that reached a speed of 120 m.p.h., the Oldsmobile spun off the icy highway and went into a ditch. When the troopers reached the car, they discovered that the driver had fled on foot, leaving the passenger in the disabled vehicle. Collins, the senior officer, set off on a search for the escaping driver. Sass took the passenger to the patrol car, ascertained her identity, and found that she was the owner of the car and that she had an outstanding traffic warrant against her. The passenger was defendant's wife.

While waiting for 2-1/2 hours for his partner to return from the chase, Sass entered the disabled auto three times: the first trip to remove the passenger's purse to verify her identity, the second occasion a cursory perusal of the contents of the car that terminated upon discovery of an empty holster, and the third a fairly thorough examination of the inside of the car. On this third examination, Sass opened an unlocked, closed suitcase that was in plain view on the rear seat. He found jewelry, a radio, a camera, a roll of adhesive tape,

an ammunition belt, a purse, and a hairdryer.[1] Sass closed the suitcase and waited for his partner's return.

When Collins returned without having captured the fleeing driver, Sass told his senior partner about the suitcase and its contents. The two officers opened the suitcase and both looked over the contents. They noticed, for the first time, several credit card charge slips imprinted with the name of Lucille Anne Moss, the decedent.

The officers ordered a private tow truck to remove the disabled vehicle, took the suitcase into their patrol car, and returned to their post. Upon arrival, they took the suitcase from the car, and proceeded to make a detailed, written inventory of the contents. Collins then attempted to contact the decedent, after tracing her phone number and Livonia address through the credit card issuer's records. When no one answered the phone, Collins contacted the Livonia Police Department. The Livonia police visited the address provided by Collins and discovered the strangled body of decedent. She was bound, her mouth taped shut, and her bedroom ransacked. It was subsequently determined that the jewelry, hairdryer, and the suitcase itself belonged to decedent.

Collins identified a mugshot of defendant as the driver who had fled on foot.[2] The Livonia police traced defendant to a bar in Wyandotte, where he was arrested by the Wyandotte police at 10:30

[1] Officer Sass testified the hairdryer was in the suitcase. Officer Collins said that he first saw the hairdryer outside the suitcase, on the floor of the car.

[2] The record is not clear, but it would seem that defendant's wife, while in the patrol car, gave her husband's name to the State Police. The State Police gave the name to the Livonia Police, prompting the Livonia Police to place a photograph of defendant in the set of photos examined by Officer Collins. There is no contention made here that the photo examination was improper.

a.m., December 29, this being about 2-1/2 days after the driver's flight from the disabled auto. At the preliminary hearing, defendant testified that, at his arrest, he had stayed awake the entire time by taking his wife's diet pills, and that he had consumed a considerable number of beers. The Livonia police picked defendant up from the Wyandotte police at 1:30 p.m. of that day. He walked with a limp, the result of frostbitten feet and the exacerbation of a prior industrial accident that had caused the amputation of the toes of his left foot.

The Livonia police served defendant with a first-degree murder warrant, gave him his Miranda[3] rights, and told defendant that a doctor would be contacted to look at his feet. Defendant was arraigned and processed at the Livonia police station. In the next seven hours, defendant was questioned by the Livonia police about the charged crime and about numerous miscellaneous topics. He was informed that the police were holding his wife on the murder charge. He may have been offered food, and was definitely served coffee. During this time, the Livonia police called the town doctor's answering service. The doctor did not arrive until 10:30 that night. The doctor examined defendant, gave him a shot, and instructed the police to soak defendant's feet. The doctor testified that defendant did not appear to be drunk, drugged, or in pain, and testified that the injury, while significant, was not grave.

After the doctor left, defendant gave the police a taped confession that recited the grisly details of the murder of decedent—death by strangulation accompanying an armed robbery. He exonerated his wife.

---

[3] Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

Defendant claims that the warrantless examination of the decedent's suitcase found in the back seat of his wife's car was a violation of his Fourth Amendment[4] rights and that all evidence directly resulting from that search should have been suppressed. He also claims that his confession was involuntary, the product of the coercion of a drugged, drunken, pained, exhausted, hungry and intimidated man. The trial judge ruled against defendant on both of these points.

## I

### THE EXAMINATION OF THE SUITCASE FOUND IN THE AUTOMOBILE

The Fourth Amendment to the U.S. Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

As has been stated by the United States Supreme Court:

"The ultimate standard set forth in the Fourth Amendment is reasonableness. In construing this command, there has been general agreement that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' * * * One class of cases which constitutes at least a partial exception to this general rule is automo-

---

[4] US Const, Am IV.

bile searches. * * * [T]he decisions of this Court dealing
with the constitutionality of warrantless searches, espe-
cially when those searches are of vehicles, suggest that
this branch of the law is something less than a seamless
web." *Cady v Dombrowski,* 413 US 433, 439–440; 93 S
Ct 2523, 2527; 37 L Ed 2d 706, 713–714 (1973) (citations
omitted).

The present case is a difficult search and seizure
case; we are required to "delve into a rather
mysterious area of the law". *Williams v United
States,* 412 F2d 729, 732 (CA 5, 1969). We must
discern whether or not the officers' examination of
the stolen suitcase should be called a search and,
if a search, whether it could properly be conducted
without a warrant. We must additionally confront
the issue of defendant's standing to challenge the
examination of a stolen suitcase found in his wife's
car.

The prosecutor claims that the officers' examina-
tion of the contents of the car, including the
suitcase, was for a recognized proper purpose.
Because the vehicle was disabled, the owner-wife
unable to drive because under custodial arrest,
and the driver having fled, the police were obli-
gated to have the car towed away. Given these
circumstances, the troopers, complying with de-
partmental practice, could examine and inventory
the contents of the car to protect the arrestee's
and the fleeing driver's property from theft and to
prevent false claims against the police for loss or
damage to the property while the car is in custody.
The argument is simply that an inventory is not a
search, but even if a search, is reasonable despite
the absence of a warrant.

A. *Inventory As Search*

I believe that the initial opening of the suitcase
by Trooper Sass and the subsequent station house

opening were both searches. Although the U.S. Supreme Court has specifically avoided ruling on this question, *Dombrowski, supra,* 413 US at 442; 93 S Ct at 2528; 37 L Ed 2d at 715 (fn), other courts have held that an "inventory" of an automobile's contents is undeniably a search of the automobile.

The depiction of an investigation of an area where one has a reasonable expectation of privacy as a mere inventory rather than a search can only be made if one views Fourth Amendment rights as dependent on police motives. The prosecutor's contention that the allegedly proper motives of the police remove this examination from the protection of the Fourth Amendment must fail, for "[t]o consider an inventory procedure not to be a 'search' does violence to the concept of the Fourth Amendment as a protection of the privacy of the citizenry against unwarranted invasion by government officials". *United States v Lawson,* 487 F2d 468, 472 (CA 8, 1973). The motive for the invasion is not the crucial focus of a Fourth Amendment inquiry; that is a "finely honed but nonsubstantive distinction". *Mozzetti v Superior Court of Sacramento County,* 4 Cal 3d 699, 706; 94 Cal Rptr 412, 416; 484 P2d 84, 88 (1971). We believe that, because an inventory may involve an examination of areas where a person has a reasonable expectation of privacy, it is a search. *Mozzetti, supra, State v Opperman,* 228 NW2d 152 (SD, 1975). But see *People v Sullivan,* 29 NY2d 69; 323 NYS2d 945; 272 NE2d 464 (1971). The Fourth Amendment protects individuals from unreasonable police intrusions. An intrusion does not lose its character as an intrusion merely because a proper motive is advanced. While certain motives may provide justification for the examination, and may therefore

make the examination reasonable, proper motives cannot transform an inventory into anything other than a search.[5] *People v Willis,* 46 Mich App 436; 208 NW2d 204 (1973), does not hold otherwise.

B. *Reasonableness Of Inventory Search*

Deciding that the warrantless inventory of the contents of this car was a search under the Fourth Amendment does not end the inquiry. It is settled that certain warrantless searches of automobiles are permissible. *Cardwell v Lewis,* 417 US 583, 589–590; 94 S Ct 2464, 2469; 41 L Ed 2d 325, 334 (1974) (plurality opinion). Again, the Supreme Court seems not to have expressly ruled on the reasonableness of a warrantless inventory search. *Harris v United States,* 390 US 234, 236; 88 S Ct 992, 993; 19 L Ed 2d 1067, 1069 (1968), expressly passes on the inventory issue, although many courts have cited *Harris* as justification for warrantless inventory of objects in plain view. *E.g., United States v Mitchell,* 458 F2d 960, 961 (1972).[6]

*Cooper v California,* 386 US 58; 87 S Ct 788; 17 L Ed 2d 730 (1967), is not exactly an inventory case, but instead involved the warrantless search of an automobile after the car had been lawfully impounded under a state forfeiture statute. The factual situation in *Cooper* is much different than that found here—not only did the police have "a continuing right to possess it",[7] but the search of

---

[5] I am not unmindful of the emphasis Justice Rehnquist places on "specific motivation" in *Cady v Dombrowski,* 413 US 433, 443; 93 S Ct 2523, 2529; 37 L Ed 2d 706, 716 (1973). However, the Justice addresses motivation in assessing the reasonableness of a search, not in considering if the examination itself is a search.

[6] *Dombrowski, supra,* 413 US at 445–447; 93 S Ct at 2530–2531; 37 L Ed 2d at 716–718, appears to treat *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968), as an inventory search case: "In *Harris* the justification for the initial intrusion into the vehicle was to safeguard the owner's property".

[7] Note, *Warrantless Searches and Seizures of Automobiles,* 87 Harv L Rev 835, 846 (1974).

the automobile was "closely related to the reason petitioner was arrested". 386 US at 61; 87 S Ct at 791; 17 L Ed 2d at 733. *Cooper,* I feel, does not provide strong authority for the inventory search conducted here. See *United States v Lawson, supra,* at 471. The auto in the present case was disabled, without a driver, possibly legitimately impounded,[8] but clearly not subject to statutory forfeiture.

*Dombrowski, supra,* suggests that certain "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute" are not unreasonable. 413 US at 441; 93 S Ct at 2528; 37 L Ed 2d at 715. *Dombrowski* involved a police examination of a car operated by a drunken police officer who lapsed into a coma following an accident. The police towed the wrecked car to a garage, then, following a "standard police procedure", searched the trunk for the police officer's revolver "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands". 413 US at 443; 93 S Ct at 2529; 37 L Ed 2d at 716. The search turned up evidence of a murder.

*Dombrowski* may be considered precedent supporting warrantless auto inventories, for the justification of an inventory search—protection of property—seems nearly as strong as the justification offered in *Dombrowski.*[9] I accept *Dombrowski* as

---

[8] MCLA 257.904(b); MSA 9.2604(2), might have allowed the police to impound the car, although the facts we have concerning the wife's traffic warrant are not clear. MCLA 257.252; MSA 9.1952, allowing impoundment of cars abandoned for 48 hours, is not applicable.

[9] MCLA 257.715; MSA 9.2415, allowing the inspection of automobiles involved in accidents, has not been invoked here. It would appear to allow an examination of the car for reasons similar to *Dombrowski.* However, the statute would not seem to allow this inspection of the suitcase. Moreover, the statute cannot be invoked as

permitting automobile inventory searches, provided that the search is not primarily to ferret out incriminating evidence, but is actually motivated by a police desire to protect individual property.[10] See *Pigford v United States,* 273 A2d 837, 840 (DC App, 1971).

Accepting that an inventory search may be made without a warrant does not end the analysis. There must still be some limits placed on an inventory search. First of all, if the sole purpose of the inventory is to protect the auto occupant's property, the occupant should, if possible, be given a chance to determine if he wants the property protected by the police and, if so, to what extent.

"We do think, however, that it should only be in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner or operator of a vehicle may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment in that instance, unless, of course, the automobile has been impounded as evidence, or pursuant to a forfeiture statute. If the impounding is done for the stated reason, the protection of the owner's property, it is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded. In cases where the owner or operator cannot make his wishes known, whether because of incapacity or absence *(i.e.,* a parking violation), in most instances the property would be adequately safeguarded by rolling up the windows and locking the doors, subject, of course, to reasonable steps to safeguard property in plain view within the automobile. We think such a standard proce-

a ruse to justify a search of the car for investigatory purposes. *See People v Lee,* 371 Mich 563; 124 NW2d 736 (1963).

[10] I am not entirely convinced that the searches in the present case were initiated as inventory searches—testimony of Officer Sass suggests that he was looking for evidence. However, the trial court appeared to rule that the search was for inventory purposes, a finding we do not readily disturb.

dure would insure as well as an inventory protection against groundless claims for lost property." *Lawson, supra,* at 477.

See also *Mozzetti, supra,* at 707–708; 94 Cal Rptr at 417; 484 P2d at 89.

In the present case, the owner of the vehicle—defendant's wife—was in police custody for an outstanding traffic warrant. Were the sole purpose of the inventory search to protect defendant's property, the police could have asked the owner what she wanted done with the contents of the car. The record shows that Officer Sass did not ask the owner what she wanted done with the items in the car. An inference might be drawn that the search was not truly for inventory purposes.

I note, as well, that the wife, on the facts before us, appeared to have a statutory right to immediate bail under *People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974). It would therefore follow that there was no immediate need to inventory the possessions of a prisoner, *e.g., People v Walker,* 58 Mich App 519; 228 NW2d 443 (1975). The wife might have protected the property by posting bail and taking the items.

However, even if the wife were unable to post bail and an inventory search was justified to protect the owner's property, I cannot agree that an inventory search of an automobile encompasses the opening of closed suitcases and containers. There must be a limit to the scope of the inventory.

On this point, there is considerable disagreement among the courts. Many courts limit the inventory to those items in plain view of the officers. *Mozzetti, supra* (cannot open suitcase found on back seat), *State v Keller,* 265 Or 622; 510 P2d 568 (1973) (cannot open a closed tackle

box on floor of back seat even after plain view discovery of narcotics paraphenalia), *State v Gwinn,* 301 A2d 291 (Del, 1973) (cannot open closed satchel found in trunk of car), *State v Opperman, supra* (cannot open closed, but un-locked, glove compartment), *City of Danville v Dawson,* 528 SW2d 687 (Ky App, 1975) (cannot open or pry into compartments or containers).

Other courts allow police to inventory all items found within closed containers. *Boulet v State,* 109 Ariz 433; 511 P2d 168 (1973) (inventory of items in small suitcase), *State v Undorf,* 210 Kan 1; 499 P2d 1105 (1972) (inventory of small suitcase; alter-nate holding), *United States v Davis,* 496 F2d 1026 (CA 5, 1974) (inventory of briefcase on front seat).

Some courts choose middle ground, somewhere between a "plain view" test and the opening of closed containers. *United States v Mitchell,* 458 F2d 960 (CA 9, 1972) (inventorying officer may place objects found in car into a partially opened sample case in car), *United States v Gerlach,* 350 F Supp 180 (ED Mich, 1972) (inventory all places that are open or could be opened without forcing locks), *United States v Kelehar,* 470 F2d 176 (CA 5, 1972) (inventory of items under floor mat).

I prefer the "plain view" test as the proper scope of a police inventory of automobiles in police possession. I believe that, weighing the proffered rationales of protection of property and protection against fraudulent claims against the extensive intrusion into a citizen's baggage that a detailed inventory would require, an inventory limited to items in plain view is sufficient. The security of a citizen's possessions is adequately guaranteed by an inventory listing of "one suitcase" and the storage of the item in the police station. I do not believe that an inventory listing of "one suitcase"

is "naive and pointless". But see *People v Walker, supra,* 58 Mich App at 525. A person whose car is in police possession or control should expect that his property will be protected by the police; he must also expect that his expectations of privacy in those possessions will be honored. I believe that the proper balancing of those expectations is to allow a police inventory of objects in plain view and to require the police to secure the possessions either by storage at the station or by locking the automobile.

C. *Reasonableness Of Search Under Other Theories*

I must hold that this search is not justifiable as an inventory search. The prosecutor urges us to declare the warrantless search valid under some other theory. I am unable to do so. The suitcase examination is clearly not "incident to an arrest". While there was a lawful arrest of defendant's wife, she was apparently immediately taken to the patrol car. She was in no position to injure the officer or to destroy evidence in the suitcase. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Preston v United States,* 376 US 364, 367; 84 S Ct 881, 883; 11 L Ed 2d 777, 780–781 (1964). Defendant had not been arrested when the suitcase was examined; the search couldn't possibly be incident to his arrest.

Nor is the warrantless search justifiable under the so-called "automobile exception", first announced in *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925). Although less stringent conditions are required to conduct a warrantless search of an automobile, the police must still have probable cause to search and there must be

some sort of "exigent circumstances", most notably an opportunity of automobile mobility, to justify a search without a warrant. *Cardwell v Lewis, supra,* 417 US at 590; 94 S Ct at 2469; 41 L Ed 2d at 335. While *Cardwell,* a plurality opinion, may stand for permissiveness in automobile searches, I do not believe that in the present case the officers had probable cause to examine the suitcase or that they faced any "exigent circumstances" that would permit a warrantless search.

When the driver sped up to 120 m.p.h., then fled on foot from the disabled car, the officers could, of course, be suspicious that he was running for reasons other than a broken taillight and driving offenses. However, their suspicions do not translate into " 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search". *Dyke v Taylor Implement Manufacturing Co,* 391 US 216, 221; 88 S Ct 1472, 1475; 20 L Ed 2d 538, 543 (1968). There was no reason to believe that the car, or particularly the suitcase, contained evidence of, or was used in the commission of, the offenses for which the driver was sought. *Cardwell, supra,* 417 US at 592; 94 S Ct at 2470; 41 L Ed 2d at 336. There were certainly no fruits of a traffic offense to be found in the suitcase. *People v Marshall,* 25 Mich App 376, 380; 181 NW2d 578, 580 (1970).

In short, suspicion of criminal culpability does not create a probable cause to search.[11] *Cf., United States v Boswell,* 347 A2d 270 (DC App, 1975).

Moreover, there were no "exigent circumstances" of inherent or potential mobility of the

---

[11] The presence of the empty holster in the car adds to the officers' suspicions, but does not make it probable that the suitcase contained the fruits or instrumentality of a crime.

automobile. The car was disabled, the owner-passenger under arrest. Although it appears that the passenger might have posted statutory bail under *People v Dixon, supra,* and could then have absconded with the contents of the car, if not the disabled car itself, we believe that the situation did not necessitate "prompt police action". *Cardwell, supra,* 417 US at 596; 94 S Ct at 2472; 41 L Ed 2d at 338. A warrant could have been sought before the same magistrate that the wife faced in seeking to post bail under MCLA 780.581, 780.582; MSA 28.872(1), 28.872(2). Were there no magistrate available, and had the wife actually posted bail with the sheriff, the situation might have been different.[12] On the facts we have before us, I find neither "exigent circumstances" nor probable cause.[13] The facts do not support a warrantless search under the "automobile exception".

D. *Standing To Contest Search*

The prosecutor finally contends that even if this search is not justified under any rationale, a defendant has no standing to contest a search of a stolen suitcase found on the back seat of his wife's car, a car from which the defendant fled. The prosecutor's argument has much merit, but I believe that under existing standing principles, defendant may object to this illegal search.

The most recent Supreme Court pronouncement on standing to object to a search is found in *Brown v United States,* 411 US 223; 93 S Ct 1565; 36 L Ed 2d 208 (1973). In that case two defendants were

---

[12] The record shows that the wife was kept in custody.

[13] I believe that while the "exigent circumstances" requirement has been significantly watered down, *Haefeli v Chernoff,* 526 F2d 1314 (CA 1, 12/15/75), the requirement still exists under *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974). The "exigent circumstances" do not appear on this record. Unlike *Cardwell,* the "potential for the car's removal" was nil—the car was in the ditch, without a driver. 417 US at 595; 94 S Ct at 2471; 41 L Ed 2d at 337.

convicted of conspiracy with a third individual to transport stolen goods in interstate commerce. Evidence obtained from an allegedly unlawful search of a co-conspirator's premises was admitted in the separate trial of the other two defendants. The Court concluded that the disputed evidence was rightfully admitted against defendants, who' alleged a possessory interest in neither the premises searched, nor the merchandise seized.

"[T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." 411 US at 229; 93 S Ct at 1569; 36 L Ed 2d at 214.

Subsequent interpretations of the case indicate that the Supreme Court did not require that defendant qualify under all three tests; defendant need only come under (a), (b), or (c) to have standing. *E.g., United States v Miller,* 500 F2d 751, 760 (CA5, 1974), *petitions for rehearing and rehearing en banc den,* 508 F2d 588 (CA 5, 1975), *cert granted* 421 US 1010, 95 S Ct 2414; 44 L Ed 2d 678 (1975), and *United States v Boston,* 510 F2d 35, 37–38 (CA 9, 1974), *cert den,* 421 US 990; 95 S Ct 1994; 44 L Ed 2d 480 (1975). See also, *United States v Smith,* 495 F2d 668 (CA 10, 1974), and *United States v Colacurcio,* 499 F2d 1401 (CA 9, 1974).

There is no doubt that defendant does not gain standing under (a) or (c); his claim of standing to challenge the search must come under clause (b) of *Brown.*

It has been said that:

> *"Brown* concisely states the rule of standing in Fourth Amendment cases: defendants must demonstrate a 'legitimate interest' of some kind in the premises searched or the objects seized. That interest may or may not be founded on some common law proprietary interest; the decisive factor in determining whether a search or seizure is 'reasonable' for Fourth Amendment purposes is whether the complaining party's reasonable expectations of privacy have been unreasonably disturbed." *United States v Hunt,* 505 F2d 931, 939–940 (CA 5, 1974), *cert den* 421 US 975; 95 S Ct 1974; 44 L Ed 2d 466 (1975).

I believe that the defendant, as the driver of the car and the husband of the owner, had a reasonable expectation of privacy in the vehicle. See *People v Mason,* 22 Mich App 595, 601; 178 NW2d 181 (1970), and *People v Sims,* 23 Mich App 194; 178 NW2d 667 (1970), *aff'd* 385 Mich 621; 189 NW2d 41 (1971), *cert den,* 405 US 1067; 92 S Ct 1510; 31 L Ed 2d 798 (1972). I believe that the fact that the suitcase turned out to be stolen is largely irrelevant; the police officers, by seizing and examining the suitcase, were searching the car, an area where defendant could expect privacy. This must be considered a search of the car; the police conduct cannot be upheld on the theory that the suitcase, not the car, was searched. It would be too whimsical a distinction to rely on the ownership of the object seized within the car as the determinative factor in a standing question. Standing would then turn on whether or not the defendant used his own suitcase in the commission of a crime. I note that it has even been said, by Judge, now Justice, LEVIN, that a defendant has standing to contest the search of a stolen car. *People v Weaver,* 35 Mich App 504; 192 NW2d 572 (1971).

As I have no doubt that the defendant was the one "against whom the search was directed", I believe he had standing to contest the search. *Jones v United States,* 362 US 257, 261; 80 S Ct 725, 731; 4 L Ed 2d 697, 702 (1960).

I find no contention here that defendant abandoned his reasonable expectations of privacy in the car by his flight. *Cf., Abel v United States,* 362 US 217; 80 S Ct 683; 4 L Ed 2d 668 (1960). The prosecution has neither argued nor shown the state of mind necessary to constitute abandonment of defendant's privacy interests; I cannot, on this record, say that defendant relinquished all expectations of privacy in his wife's car. See *United States v Moody,* 485 F2d 531, 533–534 (CA 3, 1973).

As was stated by Chief Judge LESINSKI:

"Flight to avoid prosecution standing alone does not meet the prosecutor's duty to produce 'clear, unequivocal and decisive evidence' of abandonment." *People v Mason, supra,* at 606.

Because defendant had standing to contest the search of the automobile, and because the scope of the search of the automobile is not justified by any doctrine of law, I would hold that the trial court should have excluded all testimony concerning the opening of the suitcase.

## II

### ADMISSIBILITY OF CONFESSION

Turning to the admissibility of defendant's confession, I do not address any "fruit of the poisonous tree" arguments, for neither side has raised the issue. We need not consider, on present appeal, "whether, granting establishment of the primary

illegality [suitcase examination], the evidence to which instant objection is made [confession] has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint". *Wong Sun v United States,* 371 US 471, 488; 83 S Ct 407, 417; 9 L Ed 2d 441, 455 (1963).[14]

The only challenge to the confession defendant presently advances is that it was coerced. While reviewing courts are required to examine the entire record and make an independent determination of the issue of voluntariness, we will not reverse the trial judge's determination unless we are left with a definite and firm conviction that he erred in his ruling. *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

I have read, and reread, the entire transcript of the preliminary hearing[15] and the trial. I find myself in agreement with the trial judge and we hold that the confession was voluntary. Two police officers and the police doctor all testified to defendant's capacity to think and talk. If he was drunk, drugged and in pain, it was not readily apparent to these witnesses. While the delay between the arrest and the doctor's treatment of defendant's frostbite injuries is not laudable, it does not by itself make the statement involuntary, for the final, taped confession—after a preliminary oral confession—came after the doctor's treatment.

---

[14] The arguments to be made, I suspect, would be that the issuance of the *Miranda* warnings, *Miranda v Arizona, supra,* n 3, purged the confession of the taint of the illegal search, *see Brown v Illinois,* — US —; 95 S Ct 2254; 45 L Ed 2d 416 (1975), or that the police did not reasonably foresee the kind of evidence they would obtain. *People v Roderick Walker,* 27 Mich App 609, 617; 183 NW2d 871 (1970). *See People v Jones,* 66 Mich App 223; 238 NW2d 813 (1975).

[15] The preliminary examination also served as defendant's *Walker* hearing. (*People v Walker [On Rehearing],* 374 Mich 331; 132 NW2d 87 [1965].)

And, although I cannot commend the practice of not feeding a suspect in custody, I am not convinced that the police deliberately starved the defendant into a confession. The defendant did receive some coffee.

Defendant admitted at the preliminary examination that nothing was promised him, that his' *Miranda* rights were clear, and that the only hint of coercion was the implication that "the more cooperation, the easier I'd make it on myself". This implication is hardly coercive—the confession was voluntary.

## III

Because I believe that the search of the car was illegal, evidence from that search should be suppressed. I would remand for a new trial, with the order that evidence of the chase, Collins' photographic identification of the driver, and defendant's confession be admitted, absent sustained objections.