PEOPLE v RIDER

Docket No. 78-2017. Submitted June 15, 1979, at Lansing.—Decided
November 5, 1979.

Anthony Rider and his codefendant Theodore Dudley were
charged with receiving or concealing stolen property with a
value in excess of $100. Defendants were to be tried jointly in a
bench trial in Recorder's Court for the City of Detroit, Joseph
A. Gillis, J. At the commencement of trial, Judge Gillis ac-
cepted Dudley's plea of guilty. Rider, represented by different
counsel, proceeded to trial before Judge Gillis. He was con-
victed and sentenced. Defendant appeals, claiming that the
trial judge denied him his right to an impartial trier of fact
when he did not disqualify himself *sua sponte* from conducting
a bench trial after accepting Dudley's plea of guilty implicating
Rider in the offense. On the first day of trial the following
colloquy between court and counsel was recorded:

"The Court: Is Mr. Dudley going to testify in this trial?

"Mr. La Bret [prosecutor]: No. He's not endorsed, your
Honor. I can't endorse him at this stage of the game.

"The Court: You can call him.

"Mr. La Bret: All right, I'll call Mr. Dudley."

Defendant claims error in the manner that Dudley was called
as a witness. *Held:*

1. Absent a showing of actual prejudice or bias, a defendant
is not denied his right to an impartial trier of fact where the
trial judge did not disqualify himself *sua sponte* from conduct-
ing a bench trial after accepting a guilty plea of his codefend-
ant implicating defendant in the charged offense. No prejudice
or bias in fact was shown by the defendant.

2. Dudley could not be endorsed as a witness while he was a
codefendant. After he pled guilty he became an accomplice and
could be called. The judge's question was not a request for
Dudley to be called but merely an inquiry as to whether he

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judges §§ 166, 167, 180, 181, 199, 219, 220.
[2, 3] 75 Am Jur 2d, Trial § 30.
  76 Am Jur 2d, Trial § 1239.

would be called. When the prosecutor said it was too late to call Dudley, it was an obvious error, which the trial judge corrected. The judge's action could help to present all the evidence in the case to the end that justice might be done. A judge is charged by law and conscience with the fundamental duty of seeing that truth is established and justice done under the statutes and rules of law designed to bring about such result. The action of the trial judge does not constitute reversible error.

3. The trial court did not deviate from the trial record to convict the defendant. The evidence presented at trial was more than ample to convict defendant beyond a reasonable doubt.

Affirmed.

1. CRIMINAL LAW — NONJURY TRIAL — DISQUALIFICATION OF JUDGES — PREJUDICE OR BIAS — PROOF — PLEA OF CODEFENDANT — FAIR TRIAL.

A trial judge has the right to hear a case to its conclusion absent a showing of prejudice or bias; where prejudice or bias is the reason alleged for disqualifying a judge, there must be prejudice or bias in fact; unless there is prejudice or bias, disqualification should never be based upon a decision in the due course of judicial proceedings; absent actual prejudice or bias, a defendant is not denied his right to an impartial trier of fact where the trial judge did not disqualify himself *sua sponte* from conducting a bench trial of the defendant after accepting a guilty plea of his codefendant implicating defendant in the charged offense.

2. TRIAL — JUDGES — CONTROL OF TRIAL — STATUTES AND RULES — JUSTICE — ADJUDICATION ON MERITS.

A trial judge's control should be manifest and complete at all times; therefore, he should not be restricted to the function of a mere umpire or referee in a contest between opposing parties or counsel, but is charged by law and conscience with the fundamental duty of seeing that truth is established and justice done under the statutes and rules of law designed to bring about such result, and he should, accordingly, see to it, whenever possible without doing violence to rules of practice and procedure, that cases are heard and disposed of on their merits, and, if consistent with the orderly administration of justice, that procedure should be favored which will result in a determination of the merits of the case.

3. JUDGES — TRIAL — CRIMINAL LAW — PROTECTION OF RIGHTS — PUBLIC RESPONSIBILITY — JUSTICE.

The presiding judge, in a criminal case, not only has the responsibility of protecting the rights of one accused of crime but also

an equal responsibility to the people of the state to the end that justice is not thwarted by mistake or inadvertence.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Andrea L. Solak,* Assistant Prosecuting Attorney, for the people.

*Sidney Kraizman,* for defendant.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

D. E. HOLBROOK, J. Defendant Anthony Rider and codefendant Theodore Dudley were charged under MCL 750.535; MSA 28.803, with receiving or aiding in the concealment of property valued over $100 knowing it to have been stolen. The defendants were to be tried jointly in a bench trial in the Recorder's Court for the City of Detroit. At the commencement of trial, February 1, 1978, Dudley pled guilty. Defendant Rider, represented by different counsel, proceeded to trial before the same judge and on February 3, 1978, was convicted, and sentenced the same day to a term of 1 to 5 years in prison to run consecutively with another sentence. He appeals as of right.

Two witnesses from Lockmoor Chrysler-Plymouth, of 18165 Mack Avenue, in Detroit, stated that a red Cadillac valued at over $100 was taken off their lot on July 26, 1977. This was the same red Cadillac recovered in a stripped condition after the arrest of the defendants. Sergeant Ronald Sanders of the Detroit Police Department testified for the people that he was on routine patrol on Chicago Avenue, at Carlin Avenue, at approximately 2 a.m., July 27, 1977, when he saw defen-

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

dant Rider driving a white Cadillac towing the stripped red Cadillac. A man was in the red Cadillac which was also being pushed by defendant Dudley driving a Pontiac. The witness said he made a U-turn and saw the white Cadillac make a right turn on Chicago, breaking loose from the red Cadillac. Sgt. Sanders took off in pursuit of Dudley. Although Dudley was able to elude the officer by running from his car, the officer obtained Dudley's identification and the police were able to arrest him the next day.

Another officer, Ronald Atkinson, arrested Rider as he pulled into a hamburger stand 1-1/2 blocks from Chicago and Carlin.

As the prosecution was ready to close its case, the court inquired whether Dudley was going to testify. The prosecutor replied that he had not intended to call him and that he was not endorsed. The court stated he could testify, whereupon the prosecutor called him to the stand. Dudley testified that he and a man named Henry Jackson stole the car on July 25 and they left the car at their home on Carlin that nite. During the next afternoon, Rider, Jackson and he began taking all the parts off the car, that Rider took the steering box, steering column, power steering pump, AM-FM 8-track stereo and head lights for his 1975 Cadillac. At about 1:30 a.m. of the 27th the men decided to get rid of the red Cadillac, which was by now an empty shell. He stated that he pushed the car with his Pontiac, but that it was not towed by the lead car. He said the red car parts would be found in Rider's yellow Cadillac.

Defendant Rider testified that he had no part in the matter, that he awoke on the morning of the 27th after returning home from work and saw the red Cadillac in the yard where he lived with

Dudley and another person (Leroy Hudson), and that he saw Dudley and Jackson working on the car about 5 p.m. His fiancée woke him about 2 a.m. and asked him to get her a hamburger. He asked Hudson to drive him to the restaurant in his white Cadillac. At Chicago and Carlin they spotted a police car and Hudson asked him to drive because he did not have a driver's license. After the exchange Rider said Hudson jumped out of the car and he continued on to the restaurant where he was arrested. Rider's fiancée testified that Rider was with her from 9:30 p.m. to 2 a.m., also that Rider's car still had the original parts in it.

Defendant's counsel then requested an adjournment to get the yellow Cadillac down to the court and to have Hudson come in and testify for the defendant.

The trial court agreed to have the adjournment to the next morning. Hudson appeared but testified that Rider worked on the red car and that the red car parts were placed in Rider's car and the yellow steering column from Rider's car was placed in the red car. He also testified that he and Rider drove the lead car to watch out for police cars and although they did not tow the stripped car it travelled closely behind them.

Another witness testified that Rider's car still had its original parts in it when she drove it in August.

Defendant's fiancée testified that the defendant's Cadillac was being towed down to the court house that morning.

Defendant's counsel asked for an additional delay preceding its arrival. This was denied by the court.

After hearing oral argument from both counsel the trial court found defendant guilty.

Defendant claims that the trial court denied the defendant his right to an impartial trier of fact when it did not disqualify itself *sua sponte* from conducting a bench trial of the defendant after accepting a guilty plea of his codefendant, Dudley, that implicated him in the offense.

We disagree with the defendant. With a very similar fact situation in the case of *People v Chesbro,* 300 Mich 720; 2 NW2d 895 (1942), our Supreme Court ruled that where prejudice or bias is the reason alleged for disqualifying a judge, there must be prejudice or bias in fact, and it can never be based solely upon a decision in the due course of judicial proceedings. We find no prejudice or bias in fact has been shown by the defendant.

Defendant also claims error in the manner that Dudley was called as a witness as follows:

"THE COURT: Is Mr. Dudley going to testify in this trial?

"MR. LA BRET *[prosecutor]*: No. He's not endorsed, your Honor. I can't endorse him at this stage of the game.

"THE COURT: You can call him.

"MR. LA BRET: All right, I'll call Mr. Dudley."

Mr. Dudley's testimony implicated the defendant as did defendant's own witness, Hudson. There was no objection by defendant to witness Dudley testifying. It must have been obvious to the prosecutor that while Dudley was a codefendant he could not be endorsed as a witness. However, when he pled guilty he became an accomplice and eligible to be called as a witness, subject to the rule that he could not be cross-examined by the prosecutor. The question by the judge to the prosecutor was not a request for Dudley to be called as a witness, but merely an inquiry as to whether he

would be called. When the prosecutor said it was too late to call Dudley, it was an obvious error, which the trial judge corrected. This all happened on the first day of the trial shortly after Dudley became a possible witness.

We now consider the question of whether the trial judge's action in this regard constitutes prejudicial error.

We first turn to 88 CJS, Trial, § 36, pp 93-94, wherein it is stated:

"The judge is not to be restricted to the functions of a mere umpire or referee in a contest between opposing parties or counsel, but is charged by law and conscience with the fundamental duty of seeing that truth is established and justice done, under the statutes and rules of law designed to bring about such result, and his control of the situation should be manifest and complete at all times. He should, accordingly, see to it, whenever possible without doing violence to rules of practice and procedure, that cases are heard and disposed of on their merits, and, if consistent with the orderly administration of justice, that procedure should be favored which will result in a determination of the merits of the case."

We now turn to the case of *State v Burbank,* 156 Me 269, 278; 163 A2d 639 (1960), for further light on the subject issue, wherein it is stated:

"We are fully aware of and recognize the rights of a respondent in a criminal prosecution. A justice presiding in a criminal case not only has the responsibility of protecting the rights of one accused of crime but also an equal responsibility to the people of the State to the end that justice is not thwarted by mistake or inadvertence."

In the case of *People v Ciatti,* 17 Mich App 4, 9; 168 NW2d 902 (1969), this Court ruled that it was

not error for the trial judge at the close of the people's case to inquire whether the prosecution desired to show certain exhibits to the jury.

We are satisfied that the trial judge in this instance merely called to the attention of the prosecutor the name of a possible witness, who might help to present all the evidence in the case, to the end that justice might be done. This action of the trial judge does not constitute reversible error.

We further note that the trial court did not deviate from the trial record to convict the defendant. The evidence presented at the trial was more than ample to convict defendant beyond a reasonable doubt. Other claimed errors by defendant are not sustained by the record.

Affirmed.