PEOPLE v MINIER

Docket No. 45611. Submitted June 9, 1980, at Grand Rapids.—Decided September 15, 1980. Leave to appeal applied for.

Jay H. Minier was convicted of delivery of marijuana, Cheboygan Circuit Court, Richard G. Boyce, J. Defendant appeals, alleging that he was coerced into waiving a jury trial by the rule that would have prevented a jury from consideration of lesser included offenses, that the prosecutor insinuated that the defendant was involved in large-scale drug transactions, and that the trial judge erred by denying the defendant's motion for disqualification of the judge. *Held:*

1. The rule that a jury may not be instructed on lesser included offenses for which the maximum punishment is incarceration for one year or less where the defendant is charged with an offense which is punishable by incarceration for more than two years does not apply to bench trials. The effect of this rule on the decision of the defendant of whether or not to waive a jury trial is minimal and is not coercive.

2. No objection was made at trial to the allegedly prejudicial testimony adduced by the prosecutor, and no manifest injustice appears.

3. The defendant failed to show bias or prejudice on the part of the trial judge. The motion for disqualification was properly denied.

Affirmed.

1. CRIMINAL LAW — LESSER INCLUDED OFFENSES — INSTRUCTIONS TO JURY — BENCH TRIAL.

The rule that where a defendant is charged with a felony punishable by more than two years incarceration the jury may not be instructed on lesser included offenses for which the maximum punishment is incarceration for one year or less does not apply

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 876, 880.
[2] 5 Am Jur 2d, Appeal and Error §§ 545, 548, 553.
[3] 46 Am Jur 2d, Judges §§ 166, 167.
    Prejudicial effect of trial judge's remarks, during criminal trial, disparaging accused. 34 ALR3d 1313.

to a bench trial; the effect of the rule on a defendant's choice of whether or not to waive a jury trial is minimal.

2. APPEAL — PRESERVING ISSUES — MANIFEST INJUSTICE.
Matters unobjected to at trial are not preserved for review absent manifest injustice.

3. CRIMINAL LAW — JUDGES — DISQUALIFICATION OF JUDGE.
Disqualification of a trial judge is warranted where the record discloses actual bias on the part of the judge or where the judge expresses a preconceived notion as to guilt or innocence; there must be prejudice or bias in fact.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael J. Hackett,* Prosecuting Attorney (by *Leonard J. Malinowski,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), for the people.

*Lynn Chard,* Assistant State Appellate Defender, for defendant on appeal.

Before: ALLEN, P.J., and D. F. WALSH and G. R. McDONALD,* JJ.

G. R. McDONALD, J. On January 24, 1979, defendant Jay Howard Minier was convicted by Cheboygan County Circuit Judge Richard G. Boyce, sitting without a jury, of delivery of marijuana, MCL 335.341(1)(c); MSA 18.1070(41)(1)(c).[1] He was sentenced to two years probation, plus costs of $240, and appeals as of right.

On June 8, 1978, Officer Marilyn McGuire of the Wayne County Sheriff's Department Narcotics Squad, on special duty in Cheboygan County, met defendant in the early morning hours at the Gold Front Lounge. The two engaged in conversation and McGuire asked defendant if he could get her

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Repealed and replaced by MCL 333.7401(1); MSA 14.15(7401)(1).

some "grass". Defendant told the officer to meet him at Snoopy's Bar, where he worked, the following night. McGuire met with defendant as requested and again inquired about the drug. During the course of the evening McGuire went outside with defendant, where they met two other persons, Chip and Bill. After a marijuana cigarette was passed around, defendant indicated to Chip that the grass was good and he would buy a bag. Chip provided defendant with a bag for $30 and told defendant it could be resold for $35. Defendant gave the bag to McGuire. After re-entering the bar, defendant paid Chip with money from the cash register. McGuire then asked defendant if the bag was for her, indicating that she wanted all of it. McGuire testified that she paid defendant $30 for the marijuana, while defendant stated that he could not remember whether the drug was paid for or not.

On appeal, defendant initially contends that he was coerced into waiving his right to a jury trial by the *Chamblis* rule regarding instruction on lesser included offenses. In *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), the Supreme Court held that, where a charged offense is punishable by more than two years incarceration, the jury may not be instructed on lesser included offenses for which the maximum punishment is incarceration of one year or less. The Court reasoned:

"As a matter of policy people who commit serious crimes should be punished for those offenses, and those who did not commit such serious crimes should not be tried for those crimes only to be found guilty of a much lower offense." *Id.,* 428.

Subsequently, in *People v Brown,* 87 Mich App

612; 274 NW2d 854 (1978), this Court held the *Chamblis* rule inapplicable to bench trials. *Brown* recognized that *Chamblis* sought to prevent jury confusion and compromise that could result from instruction on a wide array of lesser included offenses. These dangers are not present in a bench trial. *Id.,* 616-617. Because a defendant still retains the jury trial option, the threat of prosecutorial harassment through overcharging remains guarded against after *Brown.*

Defendant waived a jury trial to allow the court to consider two lesser included offenses, possession of marijuana, MCL 335.341(4)(d); MSA 18.1070(41)(4)(d), and distribution of marijuana without remuneration, MCL 335.346(2); MSA 18.1070(46)(2).[2] Although defense counsel stated this reason on the record, waiver was made before the trial court actually had the opportunity to rule on whether *Chamblis* would apply. While it would have been preferable for trial counsel to have requested a court ruling prior to waiver, because a fundamental right is involved we consider the question on appeal. Clearly, *Chamblis* was the rule of law in Michigan at the time of trial and, on its face, would have precluded instructions on the lesser offenses.[3]

Defendant relies primarily on *United States v Jackson,* 390 US 570; 88 S Ct 1209; 20 L Ed 2d 138 (1968), to support his claim that the waiver was coerced. In *Jackson,* the United States Supreme Court invalidated the death penalty provision of the Federal Kidnaping Act, 18 USC 1201(a). The

[2] Repealed and replaced by MCL 333.7403; MSA 14.15(7403); and MCL 333.7410(2); MSA 14.15(7410)(2).

[3] We do not speculate at this time whether the exception to *Chamblis* enunciated subsequent to this trial in *People v Miller,* 406 Mich 244; 277 NW2d 630 (1979), would have permitted the instructions in question.

act limited imposition of the death penalty to juries, making the risk of death the price for asserting the jury trial right. This result could not be justified by the provision's underlying objective, avoidance of the more drastic alternative of mandatory capital punishment in every case.

"The question is not whether the chilling effect is 'incidental' rather than intentional the question is whether that effect is unnecessary and therefore excessive. In this case the answer to that question is clear. The Congress can of course mitigate the severity of capital punishment. The goal of limiting the death penalty to cases in which a jury recommends it is an entirely legitimate one. But that goal can be achieved without penalizing those defendants who plead not guilty and demand jury trial. In some States, for example, the choice between life imprisonment and capital punishment is left to a jury in *every* case—regardless of how the defendant's guilt has been determined. Given the availability of this and other alternatives, it is clear . that the selective death penalty provision of the Federal Kidnaping Act cannot be justified by its ostensible purpose. Whatever the power of Congress to impose a death penalty for violation of the Federal Kidnaping Act, Congress cannot impose such a penalty in a manner that needlessly penalizes the assertion of a constitutional right." *Id.,* 582-583.

The *Chamblis* rule also has a legitimate purpose: to protect the defendant and the state by discouraging overcharging and preventing jury confusion and compromise. The question is whether any chilling effect on the exercise of the jury right is unnecessary and therefore excessive. Our analysis leads us to the conclusion that the effect is minimal.

The alternative that confronted defendant is

readily distinguishable from that in *Jackson.* There, the defendant faced a possible death sentence, and the pressure toward jury waiver was immense. Here, the ramifications of exercising the jury right were not so severe. Conceivably, the evidence might have shown a lesser offense, but not the charged offense of delivery. It is possible that a jury would convict in those circumstances rather than release the defendant. However, that possibility is extremely speculative and can hardly be compared to the prospect of a possible death sentence. It is noteworthy that under the statute invalidated in *Jackson* the death penalty could be avoided by waive. Here, while waiver permits consideration of lesser offenses, it brings no assurance that conviction under the charged offense will not occur. Thus, the impact of the *Chamblis* rule can hardly be described as coercive. Nor is it needless. The unnecessary encouragement of waiver in *Jackson* could have been cured by Congress by leaving the choice between capital punishment and imprisonment to a jury in all cases, or by other alternatives. *Id.,* 582-583. *Chamblis* could be applied to both jury and bench trials to remove any tendency of encouraging jury waiver. However, this would have left defendant in no better position than that which he was in. Likewise, disgarding the *Chamblis* rule would carry its own cost. Neither move is justified.

As the United States Supreme Court noted in *Corbitt v New Jersey,* 439 US 212, 218; 99 S Ct 492, 497; 58 L Ed 2d 466, 474 (1978), "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid". The *Chamblis* rule exerts only minimal influence on the right to trial by

jury,[4] and cannot be considered to have an unnecessary or excessive effect.

Defendant also argues on appeal that the prosecution insinuated at trial that defendant was involved in large-scale drug transactions. During the direct examination of Officer McGuire, the following exchange took place:

"*Q.* Well, what then took place as he returned with this bag?

"*A.* He came back with the bag and he handed the bag to Mr. Minier. Chip then stated to Mr. Minier that it would be $30 for the bag of grass. He also stated that Mr. Minier would be able to resell it for $35. The subject Chip and Mr. Minier were talking about a swap meet that was to take place in Traverse City on June 11. And the subject Chip asked Mr. Minier if he would like some grass to sell there, that he had about half a pound. And at the time Mr. Minier said—did not indicate whether or not he was going to want part of half a pound.

"*Q.* Do you recall what it was that Mr. Minier indicated about the half pound?

"*A.* That he would talk to him about it later."

No objection was made to the testimony and, in fact, defense counsel made further inquiry on cross-examination. Absent manifest injustice matters unobjected to at trial are not preserved for review. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). No injustice is present here. There is no indication that the prosecutor deliberately tried to inject prejudice into the trial or that the testimony in question influenced the court's ultimate

---

[4] Situations may arise where the *Chamblis* rule encourages trial by jury. A defendant may anticipate evidence clearly showing the charge against him to be unjustified, while pointing to guilt of a lesser included crime. Such a defendant could be benefited by an "all or nothing" verdict.

verdict. The other evidence against defendant was overwhelming. Testifying on his own behalf, defendant admitted that the transfer had taken place, but indicated that he could not remember if money was exchanged. Defendant, in effect, conceded that delivery had occurred, so any possible error was harmless. *People v Wilkins,* 82 Mich App 260; 266 NW2d 781 (1978).

Defendant's final claim on appeal is that reversal is mandated because of the trial court's denial of defendant's motion for disqualification of the judge. The judge had previously presided over defendant's entrapment hearing, at which the parties presented much of the same evidence that came out at trial.

Disqualification of a trial judge is warranted where the record discloses actual bias on the part of the judge or where the judge expresses a preconceived notion as to guilt or innocence. *People v Gibson (On Remand),* 90 Mich App 792, 796; 282 NW2d 483, 486 (1979), GCR 1963, 405.1(3). However, there must be prejudice or bias in fact. *People v Rider,* 93 Mich App 383, 388; 286 NW2d 881, 883 (1979). Since defendant demonstrated neither below, the court correctly denied the motion for disqualification. On appeal, defendant has failed to show that the trial court was privy to prejudicial evidence or evidence from which we could presume bias. The present situation is dissimilar in this respect to those cases in which the trial court had access to information not ultimately revealed at trial. See *e.g. People v Ramsey,* 385 Mich 221; 187 NW2d 887 (1971). The trial court did not err in denying the motion for disqualification.

Affirmed.