PEOPLE *v* JEFFRIES

OPINION OF THE COURT

1. CRIMINAL LAW — ON-THE-STREET QUESTIONING — WARNINGS OF RIGHTS.

A defendant's statement that he possessed an unregistered gun, made in answer to a question by police officers who had followed him out of a cafe and stopped him on the street after being told by an informant that a person fitting the defendant's description had been waving a pistol around in the cafe, was voluntarily given and properly admitted at defendant's trial for carrying a concealed weapon, even though the defendant had not been advised of his constitutional rights before the question, where the defendant was merely asked to stop and asked one question, which he readily answered and neither police officer had his gun drawn nor made any threatening gestures, because the defendant was not substantially deprived of his freedom of action.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law, § 484 *et seq.*
[2] 47 Am Jur, Searches and Seizures § 12.
[3] 5 Am Jur 2d, Arrest § 40.
[4] 5 Am Jur 2d, Arrest § 13.
[5] 5 Am Jur 2d, Arrest § 46.
[6] 5 Am Jur 2d, Arrest § 1.
[7] 5 Am Jur 2d, Arrest § 46.
[8] 5 Am Jur 2d, Arrest § 40.
[9, 10] 29 Am Jur 2d, Evidence § 764.

2. CRIMINAL LAW—STOP AND FRISK.

Police officers are authorized to stop and frisk a person when they are conducting legitimate investigations of suspicious circumstances and where the officers reasonably fear for their safety.

3. CRIMINAL LAW—STOP AND FRISK—EVIDENCE—ADMISSIBILITY.

A pistol recovered by police officers from the defendant's pocket was properly admitted into evidence at the defendant's trial for carrying a concealed weapon where the officers had followed the defendant out of a cafe and stopped him on the street after being told by an informant that a person fitting the defendant's description had been waving a gun around in the cafe, the defendant identified himself, giving the name reported by the informant, the officers asked the defendant if he had a gun, the defendant said he did, and when he began to reach into his pocket, one officer stopped him and removed the pistol from the defendant's pocket, because the officers had reasonable suspicion to frisk the defendant.

DISSENT BY TARGONSKI, J.

4. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

*The question of the existence of reasonable or probable cause to make an arrest without a warrant is best determined from the analysis of the statute providing for the necessary elements in an affidavit for a search warrant (MCLA 764.15, 780.653).*

5. ARREST—WITHOUT WARRANT—PROBABLE CAUSE—INFORMANTS—CREDIBILITY.

*Probable cause to make an arrest without a warrant based upon information supplied by an informant requires that the information be reliable, that it comes from a credible person, and that the informant have personal knowledge of the matters reported (MCLA 764.15, 780.653).*

6. ARREST—RESTRAINT OF FREEDOM.

*A defendant was effectively placed under arrest where police officers in uniform, who had followed the defendant out of a cafe onto the street after having been told by an unidentified informant that a person fitting the defendant's description had been waving a gun around in the cafe, asked the defendant to stop and identify himself.*

7. Arrest—Without Warrant—Probable Cause—Informants—Credibility.

> *Police officers lacked probable cause to arrest a defendant without warrant where the arrest took place when the officers stopped the defendant on the street after following him out of a cafe in which a person fitting the defendant's description had been waving a gun around according to information supplied by an unidentified informant, it was not shown that the officers knew the informant or that he was a credible source, and the officers had no other grounds to believe that the defendant had committed or was about to commit a felony (MCLA 764.15, 780.653).*

8. Searches and Seizures—Arrest—Without Warrant—Fruits of Illegal Arrest.

> *A pistol seized by a police officer from a defendant's pocket did not justify the arrest of the defendant and was inadmissible at the defendant's trial for carrying a concealed weapon where the police officers had been told by an unidentified person that they did not know, that a person fitting the defendant's description had been waving a gun around in a cafe, the officers observed the defendant leave the cafe and stopped him on the street, the defendant identified himself, giving the name reported by the informant, the officers asked the defendant if he had a gun, the defendant said that he did, and when the defendant began to reach into his pocket one of the officers stopped him and removed the pistol from the defendant's pocket the pistol was the fruit of an arrest without a warrant unsupported by probable cause, because there was no information shown upon which to conclude that the informant was credible (MCLA 764.15, 780.653).*

9. Criminal Law—Nonjury Trial—Preliminary Examination Transcript.

> *It is reversible error, as an absolute rule, for the trial court sitting without a jury to refer to the transcript of testimony taken at the preliminary examination except where the reference is made pursuant to the statute allowing the transcript to be considered because of the unavailability of a witness (MCLA 768.26).*

10. Criminal Law—Nonjury Trial—Preliminary Examination Transcript.

> *The Court of Appeals has an obligation as a matter of law to raise* sua sponte *the issue of the reading of the preliminary transcript by the trial court sitting in a nonjury criminal trial*

*where the reading of the transcript was not due to the un-
availability of a witness; the reading of the transcript by
the trial judge in such circumstances is reversible error.*

Appeal from Kalamazoo, Wade Van Valkenburg,
J. Submitted Division 3 January 6, 1972, at Grand
Rapids. (Docket No. 10796.) Decided March 27,
1972.

Robert L. Jeffries was convicted of carrying a con-
cealed weapon. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Donald A. Burge,*
Prosecuting Attorney, and *Robert L. Pangle,* Chief
Appellate Attorney, for the people.

*Richard J. Howard,* for defendant on appeal.

Before: FITZGERALD, P. J., and R. B. BURNS and
TARGONSKI,* JJ.

FITZGERALD, P. J. On the evening of October 11,
1969, a police officer for the City of Kalamazoo was
approached by an unidentified male and told that an
individual by the name of Robert L. Jeffries was
waving a pistol around in a nearby cafe. He and
another officer then proceeded to enter the cafe
where they observed an individual fitting the de-
scription as related by the unknown informant. The
suspect then proceeded to leave the bar and walk
down the street and the two police officers who had
followed him, asked him to stop and identify him-
self. The suspect identified himself as Robert Jef-
fries.

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

When asked if he was carrying a pistol, the defendant answered, "Yes, sir, I have a gun. I don't have papers for it. A colored fellow gave it to me at McKerring's". The suspect then started to reach into his left hand pocket and the police officer stopped him and removed from the pocket a small caliber pistol. The suspect was then arrested and read his *Miranda* rights.

Prior to trial, the defendant made a motion to suppress his statement that he did possess a gun, and also to suppress the pistol itself. The defendant contended that these pieces of evidence were the result of an illegal search and seizure. The judge denied the motion to suppress.

On October 14, 1970, the defendant was tried on a charge of carrying a concealed weapon.[1] The judge, sitting as trier of fact, found the defendant guilty, and sentenced him to two years probation.

On appeal, defendant contends that his conviction was obtained through the use of illegally obtained evidence, arguing that when the police officers stopped him, he was under arrest. He theorizes that at that point, he was so substantially deprived of his liberty that it was an in-custody interrogation and since he was not given his *Miranda* rights, the statement he made referring to possession of a gun should have been suppressed.

Defendant also claims that because the above-mentioned statement could not be used, the police officers did not have probable cause to stop him and make a search and an arrest. As a result, he says, the gun found was illegally obtained evidence and under the rule of *Mapp* v *Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), the evidence should have been suppressed.

---

[1] MCLA 750.227; MSA 28.424.

Defendant further argues that the case of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), should not apply in that the facts of the present case show that the police officers were motivated by a desire to seek evidence rather than by any fear for their own protection.

The defendant's contention that this is an in-custody interrogation cannot be sustained. *Miranda v Arizona,* 384 US 436, 439; 86 S Ct 1602, 1609; 16 L Ed 2d 694, 704 (1966), specifically states that "we deal with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation". Further on in the case, the Court announced that:

"General on the scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process is not affected by our holding." 384 US at 477; 86 S Ct at 1629; 16 L Ed 2d at 725.

In the case at hand, the police officers merely asked the defendant to stop. He was only asked one question, and the answer was readily given to the police officers. Neither officer had his gun drawn nor made any threatening gestures.

Under the above facts, it is clear that the defendant was not substantially deprived of his freedom of action, nor was he threatened or coerced into making any kind of a statement; therefore, it should be found that the defendant's statement was voluntarily given and properly admitted into evidence.

As to the defendant's contention that the search was illegal, this also cannot be sustained. The case of *Terry v Ohio, supra,* authorizes police officers to stop and frisk an individual when they are conducting legitimate investigations of suspicious circumstances, and where the officers reasonably fear for

their safety. The officers had reasonable suspicion to frisk the defendant. The police conduct in this case cannot be grounds for reversal.

The case of *Orozco* v *Texas,* 394 US 324; 89 S Ct 1095; 22 L Ed 2d 311 (1969), relied on by defendant is not analogous. The fact that the *Orozco* case followed a shooting and related to subsequent investigations removes it from serious consideration as controlling precedent in the instant case.

Affirmed.

R. B. Burns, J., concurred.

Targonski, J. *(dissenting).* For the purposes of this dissent we can and we do adopt the statement of facts and the theories of the defendant as presented in the majority opinion.

The majority makes no reference to one factual matter which we add into our consideration of this case. The two police officers entered the cafe in which their informer allegedly said the defendant was brandishing a gun. They watched the defendant in the cafe and observed no violations or any untoward conduct but nevertheless followed him when he departed from the premises. The ensuing conduct of the officers is set forth in the majority opinion and gives rise to the issues here. However, as to certain conclusions therein contained we must respectfully disagree. The first item of disagreement is an issue as to when the arrest actually occurred.

This was a situation of an arrest by a police officer without a warrant. A police officer may arrest for the commission of a felony or a misdemeanor committed in his presence, when he knows the person has committed a felony although not in his presence, when he has reasonable cause to believe that the person in question committed the felony, when he

has positive information from an authoritative source, when another officer holds a warrant for such arrest, when he has received *positive* information as may afford him reasonable cause to believe that a felony has been committed or *reasonable* cause to believe that such person has committed it, and when he has reasonable cause to believe that such person is an escaped convict or parole violator. See MCLA 764.15; MSA 28.874. None of these fact situations seems to apply in this case if we determine that the arrest took place at the time that the defendant's forward motion was first restricted by the challenge of the police officers in uniform.

The question of the existence of reasonable or probable cause is best determined from the analysis of the statute providing for the necessary elements in an affidavit for a search warrant. MCLA 780.653; MSA 28.1259(3). In the first instance it is necessary that the information supplied be reliable and from a *credible* person and that such person have the *personal* knowledge of the matters reported. In the instant case, there is no showing that the information came from a *crédible* person nor is there any basis on which to conclude that the person furnishing the information was a *credible* source. The informant apparently was a person unknown to the officer who took the information and to all intents and purposes the officer had no prior knowledge of the individual upon which to base a conclusion that he was dealing with a *credible* person.

In *People* v *Gonzales,* 356 Mich 247, 253 (1959), the Court cited favorably from 4 Am Jur, Arrest, § 2, wherein arrest is defined as follows:

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an in-

tention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested."

The United States Supreme Court in *Henry* v *United States*, 361 US 98, 103; 80 S Ct 168, 171; 4 L Ed 2d 134, 139 (1959), expressed the following view as to when an arrest took place where Federal police officers had been watching defendants shift cartons from a building to an automobile and transport them to another building in another area of the town as an outgrowth of information of an undisclosed nature implicating the defendants in a theft from an interstate shipment of whisky. The officers got out of their car and searched the defendants' car, seizing cartons therein, which were subsequently determined to contain stolen radios. The Court stated therein:

"[T]he arrest took place when the Federal agents stopped the car. That is our view on the facts of this particular case. When the officers interrupted the two men and restricted their liberty of movement, the arrest, for the purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. The fact that afterwards contraband was discovered is not enough. An arrest is not justified by what the subsequent search discloses."

Applying the Am Jur definition and the Supreme Court conclusions in *Henry* to the facts of the instant case, it is my conclusion that the Court should have and must have found that when the police officers stopped and detained the defendant, the defendant was then effectively placed under arrest prior to the

interrogation and the search which produced the gun. At that point the officers had no probable cause for the arrest of the defendant because he had committed no offense and they had no information on which to credibly conclude that there was a reasonable basis to believe that the defendant was committing or was about to commit a felony.

The arrest being illegal, any fruits of the search that followed did not justify the arrest nor lend sanctity to the gun as admissible evidence. *Henry v United States, supra.* We make no comment on the admissibility of defendant's statements after the arrest as we find it, even though it appears that he was not properly advised of his rights prior to interrogation following his arrest. See *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

An examination of the transcript indicates that at the *Walker* hearing (see p 2 of transcript of such proceedings) the court disclosed that even prior to the commencement of trial the court had read the transcript of the preliminary examination held in the instant case. The trial court in this instance was the same judge as the one who conducted the *Walker* hearing and he tried the matter without a jury and consequently sat as the trier of the facts. This gives rise to a second issue. Although we do not suggest that the trial court was prejudiced as a result of the examination of the transcript of the preliminary proceedings, we note that a trial judge sitting as the trier of the facts can assume no greater prerogative than a jury if a jury were impaneled to determine the facts. *People v Ramsey,* 385 Mich 221 (1971).

The second page of the *Walker* hearing transcript contains the following exchange between the prosecutor and the court:

"May it please the court, this is the matter of the People of the State of Michigan versus Robert L. Jeffries. Mr. Jeffries is charged with the offense of carrying a concealed weapon. A preliminary examination was held before the Honorable Claude Olmsted on Friday, November 21, 1969, and at that time the defendant was bound over to circuit court on the charge.

"*The Court:* For your information, I have read this over this morning so I know what's in it."

A fair examination of this exchange forcibly leads one to the conclusion that the trial judge had read and was familiar with the contents of the preliminary examination.

In *People* v *Ramsey, supra,* at 225, the Supreme Court of Michigan held:

"This case demonstrates the need for an absolute rule in this situation. There is no way to determine whether or not the trial court was prejudiced by 'glancing' at the transcript. In fact, it is difficult to determine precisely how much, if any, of the transcript was read by the court, or for what purpose. Therefore, in order to avoid problems of proof on this issue, we hold that as an absolute rule it is reversible error for the trial court sitting without a jury to refer to the transcript of testimony taken at the preliminary examination except under the exceptions provided by statute."

This case likewise does not come within the statutory exception which exists for the purpose of preserving the defendant's right to confrontation as guaranteed to him by the state and Federal constitutions. See MCLA 768.26; MSA 28.1049.

In light of this pronouncement by the Supreme Court we believe that as a matter of law this Court has an obligation to raise this issue *sua sponte* and

dispose of the case on the basis of what has been properly labeled by our Supreme Court as reversible error.

For both of the reasons set forth hereinabove as to the arrest and the consequent search and the illegal fruits thereof and the reading of the preliminary examination transcript prior to trial, we would reverse and remand for new trial.